IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JEFFREY PLUNKETT and ETHEL JUNE MARANAN, individually and on behalf of all others similarly situated, | § § § § § | |
| Plaintiffss, | § § | |
| V. | § § | No. 3:23-cv-2684-L-BN |
| FIRSTKEY HOMES LLC, | § § | |
| Defendant. | § § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from United States District Judge Sam A. Lindsay. *See* Dkt. No. 25.

Plaintiffs Jeffrey Plunkett and Ethel June Maranan, individually and on behalf of all others similarly situated (collectively, "Plaintiffs"), and Defendant FirstKey Homes, LLC ("FirstKey") filed a Joint Motion to Approve FLSA Settlement [Dkt No. 63].

The parties subsequently requested a hearing on their pending motion. *See* Dkt. No. 66. At the hearing held on October 29, 2024, the undersigned ordered the parties to file supplemental materials in support of their motion. *See* Dkt. No. 70. And Plaintiffs' counsel filed a Supplemental Motion for Approval and Unopposed Request

-1-

for Attorneys' Fees. *See* Dkt. No. 71.

For the reasons explained below, the Court should grant the Joint Motion [Dkt. No. 63] and approve the settlement agreement in its entirety.

## Background

Plaintiffs filed this action pursuant to 29 U.S.C. § 216(b) seeking to represent a collective action of all persons employed by Defendant as leasing agents from December 2020 to present. Plaintiffs allege that they and the putative collective members were subject to an unlawful policy whereby they worked overtime hours without overtime pay at one and a half times their hourly rate for all hours worked in excess of 40 per workweek. Dkt. No. 38 at 1.

Within the collective action, there are two proposed subgroups of leasing agents. The first subgroup includes Plaintiff Jeffrey Plunkett and all other similarly situated leasing agents who were classified by Defendant as non-exempt employees under the Fair Labor Standards Act ("FLSA") but who Plaintiffs allege were denied overtime compensation at a rate of one- and one-half times their regular rates of pay for all hours they worked over 40 in a workweek. *Id.* at 1-2.

The second subgroup includes Plaintiff Ethel June Maranan and all other similarly situated leasing agents who Plaintiffs allege were misclassified by Defendant as exempt employees under the FLSA and denied overtime compensation at a rate of one- and one-half times their regular rates of pay for hours they worked over 40 in a workweek. *Id.*

Since the case was filed in December 2023, twelve current and former FirstKey

leasing agents and regional leasing agents filed notices to join this matter as party plaintiffs, including the two named plaintiffs. *See* Dkt. No. 63 at 3.

The parties engaged in "extensive written discovery" and exchanged over two million pages of documents. *See id.* And the parties conducted a mediation and reached a settlement on July 25, 2024 following a mediator's proposal. *See id.*

At the time of settlement, Plaintiffs had not yet filed a motion for certification of a collective action and distribution of notice to potential opt-in plaintiffs, but the parties have stipulated that the putative collective action members are similarly situated for settlement purposes. *See id.*

The proposed collective settlement "encompasses the FLSA claims of 83 current and former Leasing Agents and Regional Leading Agents of FirstKey." *Id.* at 2.

The settlement provides for payment of a total of $5 million to be distributed to 83 class members, s*ee id.*, in exchange for the release of all claims by Plaintiffs, *see* Dkt. No. 64-1 at 12. As part of the settlement, the two named Plaintiffs—Jeffrey Plunkett and Ethel June Maranan—each receive service awards of $15,000 and each of the ten opt-in Plaintiffs receive a service award of $2,000. *See* Dkt. No. 64 at 9.

Plaintiffs' counsel states that "the settlement provides for substantial individual payments of a gross average of over $60,000 for each collective member." Dkt. No. 71.

The parties agreed that Plaintiffs' counsel will receive attorneys' fees totaling

40 percent of the gross settlement amount – $2 million. *See id.* at 11. And Plaintiffs' counsel seeks reimbursement of litigation expenses and costs in the amount of $19,795.42. *See* Dkt. No. 64-1 at 8.

The parties filed this Joint Motion seeking the Court's approval of the proposed settlement. *See* Dkt. No. 63.

## Legal Standards

"Under section 216(b) [of the Fair Labor Standards Act], 'when employees bring a private action for back wages under the [Fair Labor Standards Act], and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness.'" *Diaz v. Panhandle Maint., LLC*, No. 2:18-CV-097-Z, 2020 WL 587644, at *2 (N.D. Tex. Feb. 6, 2020) (Kacsmaryk, J.) (quoting *Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dept. of Labor, Emp. Standards Admin., Wage & Hour Div.*, 679 F.2d 1350, 1353 (11th Cir. 1982)).

In scrutinizing the settlement, the Court must evaluate whether: (1) "the settlement resolves a bona fide dispute over [Fair Labor Standards Act] provisions and (2) that the resolution is fair and reasonable." *Lee v. Metrocare Servs.*, No. 3:13-CV-2349-O, 2015 WL 13729679, at *1 (N.D. Tex. July 1, 2015) (O'Connor, J.); *see also Martin v. Spring Break '83 Prods., L.L.C.*, 688 F.3d 247, 255 (5th Cir. 2012) ("[P]arties may reach private compromises as to FLSA claims where there is a bona fide dispute as to the amount of hours worked or compensation due." (quoting *Martinez v. Bohls Bearing Equip. Co.*, 361 F. Supp. 2d 608, 631 (W.D. Tex. 2005)));

*Lynn's Food Stores*, 679 F.2d at 1355 (a court can enter a stipulated judgment when it "determine[s] that a settlement proposed by an employer and employees, in a suit brought by the employees under the FLSA, is a fair and reasonable resolution of a bona fide dispute over FLSA provisions.").

"The decision to approve a class action settlement is left to the district court's sound discretion." *Lee*, 2015 WL 13729679, at *1.

## Analysis

### I.    Bona Fide Dispute

The undersigned finds that a bona fide dispute exists as to the number of hours worked or compensation due. *See Diaz*, 2020 WL 587644, at *2.

"[T]he mere presence of a lawsuit is 'insufficient to satisfy the bona fide dispute requirement.'" *Id.* (quoting *Lee*, 2015 WL 13729679 at *5). "[T]here must . . . be some doubt regarding whether the plaintiffs will succeed on the merits. 'In essence, the [c]ourt must ensure that the parties are not, via settlement of the plaintiffs' claims, negotiating around the clear [Fair Labor Standards Act] requirements of compensation for all hours worked, minimum wages, maximum hours, and overtime.'" *Lee*, 2015 WL 13729679, at *5 (cleaned up) (quoting *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 719 (E.D. La. 2008)). "[W]hile the Court must give comprehensive consideration to all relevant factors, the [Court's review] must not be turned into a trial or a rehearsal of the trial." *Collins* 568 F. Supp at 720.

Here, Defendant disputed Plaintiffs' claims, including that "the Regional Leading Agents were not misclassified, that Plaintiffs were properly compensated for hours worked that Plaintiffs were no entitled to liquidated damages and that collective treatment of Plaintiffs' claims were inappropriate." Dkt. No. 63 at 6.

And, so, the parties assert that the claims here have been "throughout contested at ever turn, reflecting a bona fide dispute" *Id.*

Because there are "doubts about whether [P]laintiffs would prevail on the merits," the Court should find that the settlement agreement resolves a bona fide dispute. *See Herbert v. LTC Delivery LLC*, No. 3:19-CV-01856-X, 2022 WL 1608639 (N.D. Tex. May 20, 2022); *see also Jones v. JGC Dall. LLC*, No. 3:11-CV-2743-O, 2014 WL 7332551, at *3 (N.D. Tex. Nov. 12, 2014) (Ramirez, J.) (finding "a bona fide dispute regarding whether the overtime compensation [was] owed" where "one of the focal points of contention, i.e., whether Plaintiffs were employees, ha[d] not yet been resolved"), *report and recommendation adopted in part*, No. 3:11-CV-2743-O, 2014 WL 7336889 (N.D. Tex. Dec. 24, 2014) (O'Connor, J.)

## II.  Fair and Reasonable

Once a court finds there is a bona fide dispute, it must determine whether the settlement is fair and reasonable.

"Courts often evaluate terms of the award, attorneys' fees, costs, and service awards granted to class representatives." *Diaz*, 2020 WL 587644 at *3; *see also Lee*, 2015 WL 13729679, at *8 (evaluating and finding the total award, attorneys' fees,

costs, and services awards of $10,000 each to the eight class representatives from a common fund of $570,000 was fair and reasonable). "Although Rule 23 does not control FLSA collective actions, many courts have adopted many of Rule 23's procedures in such actions by analogy, in an exercise of their discretion to manage the litigation of collective actions under § 216(b)." *Diaz*, 2020 WL 587644 at *3 (quoting *Collins*, 568 F. Supp. 2d at 721).

In evaluating the settlement agreement, the Court must consider six factors:

> (1) whether the settlement was a product of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the factual and legal obstacles prevailing on the merits; (5) the possible range of recovery and the certainty of damages; and (6) the respective opinions of the participants, including class counsel, class representative, and the absent class members.

*Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982).

In "considering these factors, the court also should keep in mind the presumption in favor of finding a settlement fair and the overring public interest in favor of settlement." *Lee*, 2015 WL 13729679, at *3 (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)).

Applying these factors, the terms of the settlement agreement are fair and reasonable.

Here, the undersigned finds no evidence that the settlement agreement is a product of fraud or collusion. *Cunningham v. Kitchen Collection, LLC*, No. 4:17-CV-770, 2019 WL 2865080, at *2 (E.D. Tex. July 3, 2019) (quoting *Lee*, 2015 WL

13729679, at *5) ("[T]he Court may presume that no fraud or collusion occurred between counsel in the absence of any evidence to the contrary.").

The parties participated in an in-person mediation before an experienced mediator in July 2024. *See* Dkt. No. 63 at 3. Following a mediator's proposal, the parties continued to work together to reach a settlement about a week later. *See id.*

And, so, the settlement agreement was the result of "arms-length negotiations" by experienced counsel on both sides. *See id.* at 7. And the first factor favors a finding of a fair and reasonable agreement.

As to the second factor, this suit was filed on December 5, 2023, *see* Dkt. No. 1, and Plaintiffs filed an amended complaint on March 4, 2024, *see* Dkt. No. 37. So, this was case was still in the preliminary stage.

The parties contend that the case was "complex" and "carrie[d] significant risks concerning legal and factual issues." *See* Dkt. No. 63 at 8. And Defendants could appeal even if Plaintiffs ultimately prevail[ed], which would lead to further expenses and uncertainty. *See id.* The settlement agreement provides "immediate relief to Plaintiffs" and eliminates "the inherent risks both sides would bear if this had continued to resolution on the merits." *Id.* at 7.

And, so, when considering the expenses and the likely duration of the suit, the second factor favors approval of the settlement agreement.

As to the third factor, even though this case has not progressed beyond the preliminary stage, the parties participated in mediation and conducted "extensive

written discovery" and "exchanged over 2.1 million pages of documents." *See* Dkt. No. 63 at 3.

And, so, the third factor favors approval of the settlement agreement.

The fourth factor asks whether there are any obstacles to the merits of the case. Plaintiffs' counsel points out that "[c]ertification of a collective action and authorization of notice to the putative class was not guaranteed pursuant to the Fifth Circuit's decision in *Swales v. KLLM Transport Services*, 985 F.3d 430 (5th Cir. 2021)." Dkt. No. 71 at 27. And, without certification, the size of the case and potential recovery would be "severely reduced." *Id.*

While these legal obstacles to Plaintiffs prevailing on the merits of their FLSA claims do not weigh in favor of the settlement agreement, this factor is "by no means decisive" and does not weigh against it either. *See Jasso v. HC Carriers, LLC.*, No. 5:20-CV-212, 2022 WL 16927813, at *4 (S.D. Tex. Oct. 19, 2022).

The fifth factor looks at the possible range of recovery and the certainty of damages. Defendant claimed numerous defenses including that Plaintiffs were not misclassified, that they were properly compensated for work, and that they were not entitled to liquidated damages. *See* Dkt. No. 63 at 6.

But, the distribution calculations under the settlement agreement are a pro rata share determined based on: Plaintiff's weekly average compensation for the relevant time period; total weeks worked in the relevant time period; and plaintiff's weekly average overtime hours. *See* Dkt. No. 64-1 at 6. And the individual payments

are designated as 50 percent for wages and 50 percent for liquidated damages. *See id.*

The parties contend that the amount of the settlement and the allocation of sums to settlement participants is "fair and just" considering "all known facts and circumstances, including the risk of significant delay, defenses asserted by FirstKey, and numerous potential appellate issues." *See id.* at 3. And, so, the settlement agreement seems fair and reasonable.

As to the final factor, the parties are represented by experienced counsel and had the opportunity to confer with counsel prior to submitting the settlement agreement to the Court. *See id.* at 4. The parties state that this "FLSA litigation had the benefit of attorneys who are highly experienced in complex litigation and familiar with the facts and law in the case, and who have negotiated settlements" in similar litigation. *See* Dkt. No. 63 at 9. And, so, the settlement negotiations were "hard-fought." *See id.*

In the view of Plaintiffs' lead counsel, the relief to Plaintiffs is appropriate, considering the benefits the settlement provides when evaluated against the risks and uncertainties of this type of litigation. *See id.*

And, when reviewing settlement agreements, courts are "entitled to rely upon the judgment of experienced counsel for the parties … [and] absent fraud, collusion, or the like, [courts] should be hesitant to substitute [their] own judgment for that of counsel." *Cotton*, 559 F.2d 1326 at 1330.

And, so, the sixth factor favors finding that the settlement agreement is fair and reasonable.

Applying the six factors laid out by the Fifth Circuit, the settlement agreement appears fair and reasonable.

And, so, the Court should approve the agreement because there is a bona fide dispute between the parties and the settlement agreement is fair and reasonable.

## A. Service Awards

The parties propose a total of $50,000 in service awards to twelve plaintiffs: $15,000 to each of the two named plaintiffs, and $2,000 to each of the ten opt-in plaintiffs for their contributions to this litigation. *See* Dkt. No. 63 at 9-11

Courts may approve service awards to named plaintiffs if the awards are fair and reasonable. *See Lee*, 2015 WL 13729679, at *4; *see also In re Heartland Payment Sys.*, 851 F. Supp. 2d 1040, 1089 (S.D. Tex. 2012) (stating that courts often permit payment to class representatives above the amounts received by class members). But, service awards are not always merited. *See Lee*, 2015 WL 13729679, at *4.

When analyzing the propriety of a service award, courts have considered:

> 1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation; and 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

*Humphrey v. United Way of Tex. Gulf Coast*, 802 F. Supp. 2d 847, 869 (S.D. Tex. 2011).

-11-

"A similar test applied in *In re Heartland* considers (1) actions the plaintiff took to protect the interests of the class; (2) the degree to which the class benefitted from those actions; and (3) the amount of time and effort the plaintiff expended in pursuing the litigation." *In re Heartland*, 851 F. Supp. 2d at 1089.

While there is no ceiling on service awards in the Fifth Circuit, the court in *Lee* noted that "were service awards are paid out of a common fund, they tend to be far less than 1% of the common fund. *Lee*, 2015 WL 13729679, at *5 (citing *Jones*, 2014 WL 7332551, at *5, 7 (approving $3,250 incentive awards to each of four class representatives out of a common fund of $920,000 (0.35%)); *Quintanilla v. A & R Demolition Inc.*, No. H-04-1965, 2008 WL 9410399, at *3 (S.D. Tex. May 7, 2008) (approving $1,000 incentive awards to named plaintiffs out of a $180,000 settlement fund (0.55%)); *Lease Oil Antitrust Litig.*, 186 F.R.D. at 449 (approving awards of up to $10,000 per class representative out of $164.2 million settlement fund (0.006%)).

Here, the service awards amount to 0.3% and 0.04% of the common fund, respectively. Because the service awards are considerably less than 1% and in line with awards approved in other Texas district court cases, they are fair and reasonable under this test.

"[S]ome cases have also evaluated service awards for reasonableness by comparing them to awards in similar litigation and without any reference to the common fund." *Lee*, 2015 WL 13729679, at *5 (citing *In re Wells Fargo Wage & Hour Emp't Practices Litig.*, 18 F. Supp. 3d 844, 852 (S.D. Tex. 2014) ("[T]he service awards

are reasonable considering the level of involvement of the named plaintiffs and the amount of service awards provided in similar litigation.")).

And "[c]ourts have awarded incentive payments to class representatives to compensate them for activities including participation in the settlement process, oral and written discovery, depositions, and hearings. *Lee*, 2015 WL 13729679, at \*4 (citing *Purdie v. Ace Cash Express, Inc.*, No. 3:01-cv-1754-L, 2003 WL 22976611, at \*7 (N.D. Tex. Dec. 11, 2003) (Lindsay, J.) (approving incentive payments as compensation to lead plaintiffs for responding to discovery and evaluating settlement proposals among other things); *In re Lease Oil Antitrust Litig.*, 186 F.R.D. 403, 449 (S.D. Tex. 1999) (approving incentive awards where class representatives produced their personal records, appeared for lengthy depositions, and attended several hearings)).

Here, the named plaintiffs/class representatives were "significantly involved" in the case by "assisting in Plaintiffs' counsels' fact investigation, identifying potential witnesses, providing information regarding Defendant's workplace and compensation policies, and gathering and providing information responsive to Defendant's discovery." Dkt. No. 63 at 11. They also prepared to give depositions and participated in the July 2024 mediation. *See id.*

And the opt-in plaintiffs assisted Plaintiffs' counsel with discovery and gathering documents and "pivotal" information that enabled them to successfully prosecute this case. *See id.*

The service awards given to the named plaintiffs/class representatives (0.3% of the common fund) also align with the respective amounts provided in similar litigation. *See Jones*, 2014 WL 7332551, at *5, 7 (approving an award amounting to 0.35% of the common fund in a FLSA case.)

And, so, because the service awards pass muster under the tests outlined above, the Court should find that the requested service awards are fair and reasonable.

## B. <u>Attorneys' Fees</u>

Plaintiffs' counsel seeks 40 percent of the $5 million common fund, or $2 million, offered by Defendant as attorneys' fees. *See* Dkt. 63 at 11; Dkt. 64-1 at 7-8.

The Court must also assess the reasonableness of the proposed attorneys' fees. *See Lee*, 2015 WL 13729679, at *3; *Strong v. BellSouth Telecomms., Inc.*, 137 F.3d 844, 849-50 (5th Cir. 1998) ("To fully discharge its duty to review and approve class action settlement agreements, a district court must assess the reasonableness of the attorneys' fees.").

Courts "must carefully scrutinize the attorneys' fees award in a common fund settlement because the interests of the attorneys conflict with those of the class[ ]" and they are not "bound by the agreement of the parties as to the amount of attorneys' fees." *Klein v. O'Neal, Inc.,* 705 F.Supp.2d 632, 673 (N.D. Tex. 2010) (cleaned up); *see also Piambino v. Bailey,* 610 F.2d 1306, 1328 (5th Cir.1980); *In re Harrah's Entm't, Inc.,* No. 95–3925, 1998 WL 832574, at *4 (E.D. La. Nov. 25, 1998) ("An application for attorney's fees from a common fund has no natural enemies, so judicial oversight

is necessary to protect the interests of the class. This is so even where no class member has objected to the proposed attorneys' fee award." (cleaned up)).

The FLSA provides that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b).

In class action suits where a common fund is recovered and fees are awarded by the court from the fund, the Supreme Court has indicated that computing fees as a percentage of the fund recovered is the proper approach. *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1974). The lodestar method, on the other hand, entails multiplying the number of hours reasonably expended by an appropriate hourly rate in the community for similar work. *Longden v. Sunderman*, 979 F.2d 1095, 1099 (5th Cir. 1992).

But, "[t]he law in the Fifth Circuit with regard to whether to use the lodestar or percentage method remains unclear." *Lee*, 2015 WL 13729679, at *3 (citing 705 F. Supp. 2d at 674).

The court in *Klein* said:

> The Fifth Circuit has yet to definitively endorse the percentage method as a means of calculating fees in class action settlements, but numerous district courts in this circuit have applied the percentage method in common fund cases ... [t]he Manual for Complex Litigation identifies the Fifth Circuit as the only circuit that has yet to explicitly adopt the percentage method. Manual for Complex Litigation (Fourth) § 14.121 (2010) (stating that Fifth Circuit "seems to allow considerable flexibility in approving combined percentage and lodestar approaches"). The Fifth Circuit has affirmed, however, a district court's use of the

percentage method in conjunction with an analysis of the *Johnson* factors.

*Klein*, 705 F. Supp. 2d at 674.

To account for the Fifth Circuit's preference for a *Johnson*-based analysis, many district courts have adopted a hybrid analysis which employs a percentage method cross checked by the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). *See Klein*, 705 F. Supp. 2d at 674.

And, due to the uncertainty regarding whether to apply a lodestar analysis, some courts have taken it a step further and conducted both a percentage-based analysis and a lodestar analysis, each cross checked by consideration of the twelve factors set forth in *Johnson* and compared the results of the two analyses. *See id*.

Consideration of the *Johnson* factors may compel a court to adjust the attorneys fees upward or downward. *Collins*, 568 F. Supp. 2d at 728-29 (citing *Johnson,* 488 F.2d 714, 717-19).

But, the Court must also be cognizant of the fact that "the lodestar ... is presumptively reasonable and should be modified only in exceptional cases." *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993) (citing *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992)).

Here, the undersigned adopts the approach taken in *Klein* and conducts both a percentage-based analysis and a lodestar analysis, each cross-checked by consideration of the twelve factors set forth in *Johnson*, and compares the results of the two analyses. *See Klein*, 705 F. Supp. 2d at 674.

-16-

1. The Percentage Method

"The *Manual for Complex Litigation* states that '[a]ttorney fees awarded under the percentage method are often between 25% and 30% of the fund.' " *Id.* at 675 (quoting *Manual for Complex Litigation (Fourth)* § 14.121 (2010)); *see also In re Harrah's Entm't*, 1998 WL 832574, at *4 ("The majority of common fund fee awards fall between twenty and thirty percent. It is not unusual, however, for district courts in the Fifth Circuit to award percentages of approximately one third."); *In re Prudential–Bache Energy Income P'ship,* No. MDL 888, 1994 WL 150742, at *1 (E.D. La. Apr. 14, 1994) ("Historically, fee awards in common fund cases ... were computed based upon a percentage of the fund, typical in the 25% to 33% range").

"If the request is relatively close to the average awards in cases with similar characteristics, the court may feel a degree of confidence in approving the award." *Klein,* 705 F.Supp.2d at 675 (quoting Theodore Eisenberg & Geoffrey P. Miller, *Attorneys Fees in Class Action Settlements: An Empirical Study,* 1 Journal of Empirical Legal Studies 1, 37–38 (2004)).

Here, the parties request that Plaintiffs' counsel be awarded 40 percent of the total settlement amount as attorneys' fees, equaling $2 million. *See* Dkt. 63 at 11; Dkt. 64-1 at 7-8.

To justify the fee, Plaintiffs' counsel cites its "extraordinary efforts" in achieving a "highly favorable" $5 million settlement for 83 workers in a "highly contested case." *See* Dkt. No. 71 at 8-9. And Plaintiffs' counsel points to other cases

-17-

within the Fifth Circuit where they recovered at least a 40 percent award in FLSA settlements. *See id.* at 8, 11-12.

The undersigned begins its analysis by setting the benchmark percentage and finds that 30 percent is a reasonable benchmark. *Accord Jones*, 2014 WL 7336889, at *2 (finding that 30 percent is an appropriate benchmark recommended by the Manual for Complex Litigation).

The undersigned next considers the *Johnson* factors "to determine whether a deviation from the benchmark percentage range is appropriate and to test the overall reasonableness of the fee." *Klein,* 705 F.Supp.2d at 676.

The twelve factors set out in *Johnson* are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the claimant's attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the claimant or the circumstances; (8) the amount of recovery involved and the results obtained; (9) counsel's experience, reputation, and ability; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the claimant; and (12) awards in similar cases. *Johnson,* 488 F.2d at 717–19.

"[N]ot every factor need be necessarily considered", however. *In re Combustion, Inc.,* 968 F.Supp. at 1135. "[T]his is particularly so in a common fund situation" because not all *Johnson* factors are applicable. *In re Harrah's Entm't, Inc.,* 1998 WL 832574 at *4 (cleaned up)).

-18-

Regarding the first factor, Plaintiffs' counsel asserts that they devoted significant time and substantial effort to this case, as evidenced by the 2,801.5 hours of work expended since being retained. *See* Dkt. No. 71 at 17-18. And counsel states that they "actually billed more hours" but, after exercising considerable billing judgment, they excluded billing time for unproductive or unnecessarily duplicative work. See *id.* at 18.

That work included "carefully develop[ing] a keen understanding of the strengths and weaknesses of the claims, as well as potential defenses hereto, through extensive discovery and exchange of over 2.1 million pages of documents." Dkt. No. 63 at 14. Plaintiffs' counsel also completed extensive briefing on an emergency motion, prepared for depositions, and participated in a full-day mediation and lengthy post-mediation settlement negotiations." *See* Dkt. No. 71 at 18-19. And, after reaching a putative settlement, Plaintiffs' counsel worked on drafting the settlement agreement, settlement administration, and requesting approval from the Court. *See id.* at 19.

Plaintiffs' counsels' billing records demonstrate the substantial and consistent workload that this litigation required. *See* Dkt. No. 72-1 at 15-54.

And, so, the time and labor Plaintiffs' counsel put forth justifies an increase in the benchmark percentage. *Accord Jones*, 2014 WL 7336889, at *2 (recognizing Plaintiffs' counsel's time and labor warranted an upward departure from the benchmark percentage).

The second factor looks at the novelty and difficulty of the case.

Plaintiffs' counsel asserts that the claims and defenses in this case were complex because it involved "two sub-classes of plaintiffs, some of which were misclassified and others who worked exclusively off-the-clock." Dkt. No. 71 at 22. And this case involved "the complexity of obtaining FLSA certification and notice under *Swales v. KLLM Transport Services, 985 F.3d 430* (5th Cir. 2021)." *Id.* at 23.

And, so, the intricacies of the class and obtaining certification and notice in this FLSA collective action favor an increase in the benchmark percentage. *Accord Klein*, 705 F.Supp.2d at 677 (finding that the complexity of issues presented in the cased justified an increase in the benchmark percentage).

The fourth factor considers the degree to which Plaintiffs' counsel was precluded from accepting other engagements. Plaintiffs' counsel contends that it was required to "fully devote their efforts to this matter" and declined new cases a result. *See id.* And their dedication to this case "prevented them from devoting time to other matters, which significantly impacted firm income." *Id.* at 23-24.

The reported hours demonstrate that the decision to represent Plaintiffs required a strong commitment and resulted in the loss of other work. *Accord Klein*, 705 F.Supp.2d at 678 (finding that the extent to which class counsel were precluded from accepting other work favored an increase in the typical benchmark level).

And, so, this factor merits an increase in the benchmark percentage.

The fifth and twelfth factors examine the customary fee and awards in similar cases. Plaintiffs' counsel cites several cases in the Fifth Circuit, including within this

district, where courts awarded counsel 40 percent of the gross settlement fund in FLSA and other employment-related cases. *See, e.g., Parker, et al., v. Silverleaf Resorts, Inc., et al.*, No. 3:14-cv-02075-B (N.D. Tex. Sept. 7, 2018); *Edwards, et al. v. KB Home*, No. 3:11-cv-00240 (S.D. Tex. Sep. 15, 2016); *Freeman v. Progress Residential Prop. Manager, LLC*, No. 3:16-cv-00356, (S.D. Tex. Mar. 29, 2019).

The sixth factor favors an increase in the typical benchmark percentage because Plaintiff's counsel took the case on a contingency basis with no guarantee of any recovery. *Accord Klein*, 705 F.Supp.2d at 678. And the "separately-negotiated, agreed contingency fee" in the attorney fee agreement between Plaintiffs and their counsel provided for a fee of 40 percent of the gross settlement amount. *See* Dkt. No. 63 at 14.

The undersigned considers last the amount involved and the results obtained.

In the Fifth Circuit, "the most critical factor in determining a fee award is the degree of success obtained." *Singer v. City of Waco, Tex.*, 324 F.3d 813 (5th Cir. 2003) (cleaned up).

Here, Plaintiffs' counsel settled the case for $5 million for a class of 83 workers, which counsel describes as "substantial." *See* Dkt. No. 71 at 26.

The undersigned agrees considering the individual payments of a gross average of over $60,000 for each collective member. And counsel brought an earlier settlement of the case, allowing a meaningful cash award to Plaintiffs without the risk of protracted litigation.

And, so, the amount involved and the recovery obtained for the class favors an increase in the percentage of attorneys' fees. *Accord Jones*, 2014 WL 7336889, at *2 (finding that an upward departure from the benchmark percentage is warranted for the result obtained); *Klein*, 705 F.Supp.2d at 678 (same).

Based on consideration of the relevant *Johnson* factors and the finding that most of the factors weigh in favor of an increase in the benchmark percentage recovery, the Court should find that a fee award of 40 percent is fair and reasonable.

2. The Lodestar Method

The undersigned now cross-checks its finding by analyzing the request under the lodestar method. *See Klein*, 705 F. Supp.2d at 679. Under this method, the court takes the recorded hours worked by the attorneys and multiplies them by a reasonable hourly rate. *See, e.g., Forbush v. J.C. Penney Co.*, 98 F.3d 817, 821 (5th Cir.1996). The resulting lodestar amount may then be adjusted upward or downward depending on the court's application of the Johnson factors. *See id.*

Plaintiff's counsel provided records of billable hours expended on this litigation from March 2023 through November 2024; the total of all Plaintiffs' counsel time is approximately 2,802 hours. *See* Dkt. No. 72-1. This includes "[a]nticipated additional attorney time following Court approval of settlement, including attorney time to be spent during notice period and time to be spent for completion of settlement, working with the settlement administrator, answering questions from clients, filing notices of consent, and communicating with opposing counsel as issues arise." *Id.*

The undersigned has not meticulously analyzed the reported hours line-by-line, but they appear to be reasonable based on a general review of the submitted hours.

The undersigned now turns to the second step in its lodestar analysis: determining the reasonableness of Plaintiffs' counsel's rates.

"Reasonable hourly rates are determined by looking to the prevailing market rates in the community in which the district court sits." *Aguayo v. Bassam Odeh, Inc.*, No. 3:13-CV-2951-B, 2016 WL 7178967 (N.D. Tex. Dec. 8, 2016) (cleaned up).

Plaintiffs' counsel has provided suggested figures to use as reasonable hourly rates for their time: $775 for lead counsel (who has 30 years of experience), $490 for a seventh-year associate, and $390 for a third-year associate. *See* Dkt. No. 71 at 20.

"The Fifth Circuit has noted that a court is itself an expert in attorneys' fees and 'may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment with or without the aid of witnesses as to value.'" *In re OCA, Inc. Sec.*, 2009 WL 512081, at *25 (quoting *Campbell v. Green*, 112 F.2d 143, 144 (5th Cir.1940)).

Six years ago, a court in this district approved a rate of $675 per hour for the same lead counsel and $325 per hour for the same associate (now with seven years of experience). *See Parker, et al., v. Silverleaf Resorts, Inc.*, et al., No. 3:14-cv-02075-B (N.D. Tex. Sept. 7, 2018).

And Plaintiffs' counsel's hourly rates are in line with those other Northern District courts have determined to be reasonable for similarly situated timekeepers. *See, e.g.*, *Hill v. Schilling*, No. 3:07-CV-2020-L, 2022 WL 1321548 (N.D. Tex. May 3, 2022); *Olibas v. Native Oilfield Servs., LLC*, 104 F. Supp. 3d 791, 810-812 (N.D. Tex. 2015).

And, so, based on its knowledge of the reasonable rates charged by attorneys of similar experience and ability as those here, the undersigned finds that the rates charged by Plaintiffs' counsel are reasonable.

Taking these reasonable hourly rates and multiplying it by the respective number of hours worked for each attorney, the resulting lodestar fee is approximately $1,613,765 (i.e., $775 per hour × 1,072.7 hours + $490 per hour × 1,081.9 hours + $390 per hour × 646.9 hours). *See* Dkt. No. 72-1 at 11.

The court next considers whether the lodestar should be adjusted based on its analysis of the *Johnson* factors. "The purpose of a lodestar cross-check of the results of a percentage fee award is to avoid windfall fees, i.e., to ensure that the percentage approach does not lead to a fee that represents an extraordinary lodestar multiple." *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F.Supp.2d 732, 751 (S.D.Tex.2008) (cleaned up).

An upward adjustment under *Johnson* is merited for the same reasons that the undersigned concludes that an increase in the percentage benchmark fee is appropriate.

Here, Plaintiffs' counsel uses a multiplier of 1.24. *See* Dkt. No. 71 at 28. Applying a multiplier of 1.24 results in a fee award of approximately $2,001,068 (i.e., 1.24 × $1,613,765).

"Multipliers ranging from one to four frequently are awarded in common fund cases when the lodestar method is applied." *In re Combustion, Inc.*, 968 F.Supp. at 1133. But, the multiplier can far exceed that number. *See Di Giacomo v. Plains All Am. Pipeline*, No. CIV.A.H-99-4137, 2001 WL 34633373 (S.D. Tex. Dec. 19, 2001) (approving a multiplier of 5.3).

In *Klein*, the court approved a multiplier of 2.5 because of the "risks entailed in [the] lawsuit and the "zealous efforts of the attorneys that resulted in a significant recovery for the class." *See Klein*, 705 F. Supp. 2d at 680. And, as Plaintiffs' counsel points out, "[m]ultipliers in this range are not uncommon in class action settlements." *See Klein*, 705 F. Supp. 2d at 680 (collecting cases).

And, so, due to the risks of non-recovery and ultimate result obtained for the class, the undersigned finds that a multiplier of 1.24 is appropriate.

The result under this lodestar cross-check results in an award of attorneys' fees that is slightly greater than the award of 40 percent of the common fund (i.e., $2,000,000 vs. $2,001,068).

And, so, the court finds that an attorneys' fees award equaling 40 percent of the class recovery is fair and reasonable.

**Recommendation**

The Court should grant the Joint Motion [Dkt. No. 63] and approve the settlement agreement in its entirety.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: November 21, 2024

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE